IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DUSTIN ARCHER,                     )
                                   )
       Plaintiff,                  )
                                   )
                                   )    CIV-14-746-HE
v.                                 )
                                   )
CAROLYN W. COLVIN,                 )
  Acting Commissioner of Social    )
  Security Administration,         )
                                   )
       Defendant.                  )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative History and Medical Evidence

On October 14, 2010, Plaintiff, who was then 32 years old, filed an application for disability benefits. (TR 186-189). Plaintiff alleged that he became disabled on April 1, 2007, and the agency found Plaintiff was insured for Title II disability insurance benefits through December 31, 2012. (TR 209). Plaintiff alleged disability due to a traumatic brain injury,

1

back pain, a vision impairment, limited left-sided motor skills, and a knee injury. (TR 213). Plaintiff has a 12th grade education, and he stopped working on April 1, 2007, when he was laid off from his job as an unloader. (TR 214, 215). Plaintiff also has previous work experience as a pizza delivery driver. (TR 215, 219, 249).

The medical record reflects that in August 1993, at the age of 15, Plaintiff was seriously injured in a motorcycle accident. In this accident, Plaintiff suffered a severe closed head injury, fractured right mandibular condyle and symphysis, pulmonary contusions, and a knee injury. (TR 364). He underwent surgery to repair his right temporomandibular joint in February 1994 and underwent a second surgical procedure to repair the temporomandibular joint in May 1995. (TR 364, 378). He also underwent surgery to repair his knee injury. (TR 364).

In May 2001, Dr. Balyeat, an ophthalmologist, stated that Plaintiff had "bilateral right interior quadrantanopsia which involves the visual axis. He does have a 25% loss of total visual efficiency." (TR 361). In May 2001, a counselor with the Oklahoma Department of Rehabilitative Services certified Plaintiff as a person with a severe disability under state law. (TR 362).

Testimony at an administrative hearing conducted on December 4, 2012, before Administrative Law Judge Thompson ("ALJ") revealed that Plaintiff began working at Tinker Air Force Base in Oklahoma in 2001 under a Special Employment Advantage ("SEA") program for individuals with disabilities. (TR 68). The position involved three activities--driving a forklift, data entry, and unloading. (TR 69). The vocational expert

("VE") who testified at the hearing stated that this was not competitive employment but was considered a "work hardening" or "training" program. (TR 69). Plaintiff testified he was laid off from this position as part of a reduction-in-force decision and that he had not worked since he left this position in 2007.

In a Function Report completed by Plaintiff's mother on June 24, 2011, his mother stated that Plaintiff had limited motor skills and was unable to make rational decisions because of his brain injury. (TR 227-234). She stated that Plaintiff needed constant assistance and supervision, had no ability to budget his money, slept almost constantly, usually 20 hours a day, could not stand for long periods of time or walk far due to his knee injury, and had "blind spots" in his vision.

Plaintiff also completed a Function Report in which he described his usual daily activities, which included home maintenance and yard maintenance chores, caring for his grandmother's yard, laundry, ironing, cooking, shopping, watching television, working on cars, visiting with family, paying attention "as long as I want," helping care for his infant niece, and attending church. (TR 239-246). Plaintiff estimated he could lift 20 pounds, could not squat or bend, and could walk 100 yards.

The record includes office notes of treatment of Plaintiff by Dr. Ruffin in December 2011, July 2012, and October 2012. (TR 349-353, 356). Dr. Ruffin treated Plaintiff with medications for low back pain, depression, and knee joint pain. In a written Functional Capacity Questionnaire dated July 25, 2012, Dr. Ruffin opined that Plaintiff could sit for 7 hours, frequently lift 10 pounds, occasionally lift 20 pounds, rarely crouch, occasionally bend

3

or stoop, frequently finger, grasp, or handle objects, that he rarely experienced pain severe enough to interfere with his attention and concentration needed to perform even simple work tasks, that he had signs and symptoms of depression and reduced range of motion in his left knee, and that Plaintiff would, on average, be absent from work one day per month due to his impairments or treatment. (TR 345).

The record includes the report of a consultative physical examination of Plaintiff by Michael Roberts, M.D., conducted on July 12, 2011. (TR 296-302). Based on a physical examination of Plaintiff, Dr. Roberts assessed Plaintiff with a history of traumatic brain injury with subsequent visual and intellectual impairment, history of multiple facial fractures with subsequent dysphagia and speech dysfunction, and limited left lower extremity function due to knee pain and limited range of motion. (TR 302).

Plaintiff also underwent a consultative psychological evaluation conducted by Kara Rodgers, Psy.D., on August 30, 2011. Dr. Rodgers reported that Plaintiff walked without evident difficulty, exhibited a euthymic affect and average intellectual functioning, "did not seem to be experiencing cognitive difficulties," and was "functioning adequately." (TR 303-304).

The state agency medical consultants, Edith King, Ph.D., and Sheldon Levy, Ph.D., reviewed the evidence, including the reports of the consultative examiners and medical consultants and the function reports completed by Plaintiff and his mother, and determined that Plaintiff did not have a medically-determinable mental impairment. (TR 306, 329, 341).

Two state agency medical consultants, Elva Montoya, M.D., and J. Marks-Snelling, D.O., also reviewed the medical and nonmedical evidence and opined that Plaintiff was capable of performing medium work limited to occasionally climbing stairs or ramps, occasionally using ladders, ropes, or scaffolds, occasionally kneeling, and frequently balancing, stooping, crouching, or crawling. (TR 320-327, 343).

II. ALJ's Decision

In the ALJ's decision, the ALJ found at step one that Plaintiff's insured status expired on December 31, 2012, and that Plaintiff did not engage in substantial gainful activity between his alleged disability onset date of April 1, 2007, and his date last insured on December 31, 2012. (TR 17). At step two, the ALJ found that Plaintiff had impairments "which, when combined, constituted a 'severe' combination of impairments as that term is defined by the [C]ommissioner for the purpose of satisfying step two of the sequential evaluation process: history of a serious remote August 1993 motorcycle accident resulting in dental surgery on February 28, 1994, of right temporomandibular joint arthroplasty with interpositional dura graft for right tempor[o]mandibular joint bony ankylosis; the dentist who performed that dental surgery gave his impression in February 1994 that the motorcycle accident caused a 'residual mental deficit' or a 'residual neurological deficit' because of the history of a 'closed head injury, as well as a left knee injury and pulmonary contusions;' a history of a May 6, 2001 bilateral right inferior quandrantanop[sia] with a reported 25 per cent loss of visual efficiency (at that time); and depression." (TR 17-18).

At the third step, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed impairment. At step four, the ALJ found that from April 1, 2007 through December 31, 2012, Plaintiff had the residual functional capacity ("RFC") "to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and/or walk (with normal breaks) for a total of six hours in an 8-hour work day; sit (with normal breaks) for a total of seven hours in an 8-hour workday; frequently finger, grasp, and handle; occasionally stoop; rarely crouch; during a typical workday the claimant will rarely experience pain severe enough to interfere with attention and concentration needed to perform even simple work tasks; and on average, the claimant's impairments or treatment would cause the claimant to be absent from work about one day per month." (TR 22).

After finding that Plaintiff was not capable of performing his past relevant work as a pizza delivery driver, and relying on the VE's testimony, the ALJ found at step five that there are jobs existing in significant numbers in the economy that Plaintiff could perform, including the jobs of food preparation worker, counter attendant, and cashier II. Based on these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (TR 25-26).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

III. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

The agency found that Plaintiff's insured status for the purpose of Title II disability insurance benefits expired on December 31, 2012. Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that he was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on

7

December 31, 2012. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

IV. Credibility

In his Opening Brief, Plaintiff contends that the ALJ erred by partially discounting his and his mother's credibility.[1] The ALJ recognized in the decision that he was required to assess Plaintiff's credibility in connection with the RFC determination. The ALJ summarized Social Security Ruling ("SSR") 96-7p, which provides guidance to administrative factfinders in making the necessary credibility determination. (TR 23-24).

The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about his symptom(s) and [their] functional effects." SSR 96-7p, 1996 WL 374186, at *1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). An ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements" in

---

[1] Plaintiff has presented arguments in his Opening Brief that are both unsupported and irrelevant to this Court's review of the Commissioner's decision. For these reasons, Plaintiff's argument regarding a request for a subpoena for the records of Plaintiff's former attorney and Plaintiff's complaint that the ALJ spent an inordinate amount of time at the hearing questioning Plaintiff about his criminal history are not addressed herein. Plaintiff's Opening Brief is replete with aggressive, hostile language directed toward the ALJ and the Defendant Commissioner that has no place in a legal brief. Plaintiff's attorney is cautioned that in the future he should limit his arguments to concise, rational arguments supported by appropriate legal jurisprudence rather than a subjective, unsupported diatribe directed toward administrative officials.

determining a claimant's credibility. SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

In his decision, the ALJ considered several relevant factors in evaluating Plaintiff's credibility, including the wide variety of usual daily activities described by Plaintiff and his mother, Plaintiff's scant and conservative medical treatment, objective medical evidence, and the opinion of his treating physician that he is able to perform work-related activities. (TR 24).

Specifically, the ALJ found that after Plaintiff's motorcycle accident he was able to return to work in 1997, that he worked from 2000 through April 1, 2007, that he was treated for and exhibited pain and stiffness in his lower back and knees but that treating and evaluating physicians reported he had intact strength, mobility, station, gait, reflexes, sensation, and neurological functions, that he had not prescribed the use of a cane or other assistive device, and that no treating or evaluating physician had found him to be disabled or determined Plaintiff had restrictions or limitations consistent with disabling impairments. (TR 24). The ALJ also reasoned that in July 2012 Plaintiff's primary treating physician had assessed him as being capable of performing "a wide range of light work." (TR 24). The ALJ further found that Plaintiff's and his mother's reports and Plaintiff's testimony concerning the severity of his visual and mental impairments were not supported by objective medical evidence in the record. Finally, the ALJ noted that Plaintiff reported and testified

9

that he had been laid off from his last job for reasons that were not related to his ability to perform work as a result of his health impairments. (TR 24).

All of the reasons cited by the ALJ in the decision for discounting Plaintiff's and his mother's credibility are well supported by the record. Plaintiff worked for several years following his accident, indicating that his physical, mental, and visual injuries were not as severe as he alleged. Plaintiff complains that his last job was not even considered "competitive work" by the VE, and therefore the ALJ could not rely on the fact that Plaintiff was laid off from this job as a reason to discount his credibility. Regardless, however, of whether Plaintiff's last job was considered competitive work, Plaintiff worked in this position for several years and, as the ALJ found, he was not terminated from the position as a result of any physical and/or mental impairment. In fact, Plaintiff testified that if he had not been laid off from this position he would still be performing the job. (TR 65).

The ALJ properly considered this fact as one of many factors in determining that Plaintiff's allegations of severe, disabling mental and physical impairments were not entirely credible. A common sense reading of the decision reflects that the ALJ provided valid reasons for discounting Plaintiff's credibility, and no error occurred in the ALJ's evaluation of Plaintiff's or his mother's credibility. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)(employing "common sense" as a guide, ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility").

V. ALJ's Failure to Order a Second Consultative Psychological Evaluation

Plaintiff contends that the ALJ erred in failing to order a second consultative

psychological evaluation that would include specific psychological testing. The ALJ addressed this issue in the decision. Relying on the regulation, 20 C.F.R. § 404.1519a(2)9B), which sets forth situations that would normally require a consultative examination, the ALJ found no cause for ordering additional mental testing. (TR 13). The ALJ pointed to the report of the consultative psychological examiner, Dr. Rodgers, who found Plaintiff had no medically-determinable mental impairment and the reports of the state agency medical consultants who reached the same conclusion. The ALJ found that based on the evidence in the record the Social Security Administrative had "fully and fairly developed the record in this case." (TR 13).

In the report of her consultative psychological evaluation of Plaintiff, Dr. Rodgers suggested that "[c]urrent comprehensive psychodiagnostic testing appropriate to the claimant's capability level, and the acquisition of complete background records are recommended as an independent means of corroborating the [stated] diagnostic impressions, which are based solely upon the client's clinical presentation, reported complaints, and reported/documented history." (TR 304). Although Plaintiff contends that this suggestion warranted an order directing a second psychological evaluation with specific testing, Plaintiff provided no evidence of mental health treatment other than the office notes of his treating family practitioner, Dr. Ruffin. Moreover, the agency was not required to follow the consultative examiner's recommendation, and Plaintiff provides no authority for such a requirement.

An ALJ "has broad latitude in ordering a consultative examination." <u>Diaz v. Sec'y of</u>

Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990); see also Thompson v. Sullivan, 987 F.2d 1482, 1491 (10th Cir.1993) (stating ALJ has discretion to order consultative examination). In this case the medical record, including the report of the consultative psychological examiner and the report of the consultative physical examiner, the office notes of Plaintiff's treating physician, and the nonmedical evidence, including Plaintiff's and his mother's function reports and Plaintiff's hearing testimony, provided sufficient evidence with which to resolve the issue of the severity of Plaintiff's mental impairment. See Harlan v. Astrue, 510 Fed. App'x. 708, 712 (10th Cir. 2013)(unpublished op.)("Without a statute, regulation, or case requiring an ALJ to rule on a request for a consultative examination or to provide reasons for the ALJ's ruling, the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing."). Thus, the ALJ did not abuse his discretion by failing to order a second consultative psychological evaluation.

VI. RFC Assessment

Plaintiff contends that the ALJ erred in several respects in determining Plaintiff's RFC for work. Plaintiff first points to the evidence in the record that as a result of his 1993 motorcycle accident Plaintiff suffered a loss of his field of vision. In the decision, the ALJ recognized that Plaintiff had been diagnosed with a vision defect representing a 25 per cent loss of visual efficiency, and provided a lengthy explanation based on the medical and nonmedical evidence in the record for the finding that Plaintiff's visual impairment was not severe during the relevant time period. (TR 20).

Plaintiff points to only one of those stated reasons as being erroneous. The ALJ noted in the decision that "more recent [vision] testing on July 12, 2011 by Dr. Michael Roberts, M.D. reports that the claimant's vision without glasses is 20/20 in the right eye and 20/30 in the left eye." (TR 20, 301). Plaintiff correctly points out that Plaintiff's visual impairment involves his field of vision and not visual acuity, as is expressed in Dr. Roberts' examination report. However, even if this testing did not address Plaintiff's field-of-vision defect, the ALJ did not rely entirely on Dr. Roberts' vision examination findings in determining the severity of Plaintiff's visual impairment. Rather, the ALJ pointed to other, relevant evidence in the record which indicated Plaintiff's visual defect does not significantly restrict his ability to work. For instance, as the ALJ pointed out in the decision, Plaintiff was able to read and complete the agency's forms, he could drive a car and go out alone by his mother's report, he spent most days doing things around his home and working on cars by his own report, and the state agency medical consultants determined he had no visual limitations. Plaintiff testified that he saw a "blind spot" and some "blurry" spots in the lower area of his field of vision and that he saw "floaters," but Plaintiff also testified that he had a driver's license although it had been forfeited due to criminal charges, and Plaintiff stated he could follow written instructions very well. (TR 41, 43-44, 244).

There is substantial evidence in the record to support the ALJ's finding that Plaintiff's visual defect was not severe, and there is substantial evidence in the record to support the ALJ's findings that no visual impairment restricted Plaintiff's ability to work and that no vision restrictions should be included in the RFC assessment.

Nothing in the record indicates, as Plaintiff suggests, that the ALJ determined Plaintiff's RFC for work prior to considering the credibility issue. Finally, although Plaintiff contends that the ALJ should have specifically considered Plaintiff's obesity in determining his RFC for work (see TR 356), no treating or examining physician indicated that Plaintiff' ability to work was limited by obesity, and Plaintiff's own treating physician, Dr. Ruffin, opined that Plaintiff was capable of performing work activity.

Plaintiff raises a new argument in his Reply Brief. Plaintiff contends that the ALJ's RFC finding is faulty because the ALJ found Plaintiff's depression constituted a severe impairment but did not include specific work-related limitations in the RFC assessment to address this severe impairment. Plaintiff has not accurately described the ALJ's step two finding, in which the ALJ determined that Plaintiff had a combination of impairments that, when combined, constituted a "severe" impairment within the meaning of the regulations. (TR 17-18).

The record reflects that, based on Plaintiff's complaint in December 2011 that he was depressed but had not been treated for depression since 1998, Dr. Ruffin noted a diagnostic impression of depression and prescribed anti-depressant medication for Plaintiff. (TR 352-353).

In Dr. Ruffin's written Functional Capacity Questionnaire dated July 25, 2012, Dr. Ruffin noted that he had diagnosed Plaintiff with depression, chronic knee pain, and low back pain and that Plaintiff showed signs and symptoms of depression. (TR 345). The only significant functional limitation described in this medical source statement related to

depression was the estimation that Plaintiff would "[o]n average" be absent from work "[a]bout one day per month" due to his impairments or treatment. (TR 345). Following the agency's regulation for assessing the severity of a mental impairment, see 20 C.F.R. §404.1520a, the ALJ expressly found in the decision that Plaintiff's impairment due to depression had not resulted in functional restrictions in the areas of daily living activities, social functioning, or his ability to maintain concentration, persistence, or pace. (TR 20). Plaintiff does not point to any evidence in the record that is inconsistent with the ALJ's finding. As the ALJ pointed out in the decision, neither the consultative psychological examiner or the reviewing medical consultants found that Plaintiff had a medically-determinable mental impairment. The ALJ did not err in failing to include mental work-related limitations in the RFC assessment.

The ALJ relied on Dr. Ruffin's medical source statement concerning Plaintiff's RFC for work and determined, based on Dr. Ruffin's opinion and the VE's testimony, that Plaintiff was capable of performing jobs available in the economy during the relevant time period. There is substantial evidence in the record to support the step four RFC assessment and the step five decision. Therefore, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before _____ May 4th, 2015, in

accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   13th   day of   April  , 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE